**SIGNED this 11 day of August, 2020.**



_____
John T. Laney, III
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| In re: | * | |
| SHANEKA NECOLE PASCHAL | * | Chapter 13 |
| Debtor, | * | Case Number: 19-70879- JTL |
| | * | |
| NISSAN INFINITI LT, | * | |
| | * | |
| Movant, | * | |
| | * | |
| v. | * | |
| | * | |
| SHANEKA NECOLE PASCHAL and | * | |
| KRISTIN HURST, as Trustee, | * | |
| | * | |
| Respondent. | * | |

**MEMORANDUM OPINION ON CREDITOR'S**

**MOTION FOR RELIEF FROM STAY**

This matter came before the Court on Creditor Nissan Infiniti LT's Motion for Relief

from Stay. Doc. 22. Creditor Nissan Infiniti LT (Nissan) filed this Motion as well as an objection

to the confirmation of Debtor Shaneka Paschal's Chapter 13 bankruptcy plan. Doc. 21. Nissan moved for relief from the stay asserting that the Debtor had executed a lease contract with the Creditor and the lease was not properly treated. Nissan also stated that Debtor failed to provide for adequate protection in her plan. Debtor, however, argues that the agreement was not a lease and instead was a disguised security agreement. After oral argument, the Court finds that the agreement between Debtor and Nissan is a true lease and as a result, Creditor Nissan's motion for relief from stay is granted. Additionally, Nissan's objection to confirmation is sustained.

I. **FACTUAL HISTORY**

This motion arose during Debtor's chapter 13 bankruptcy petition filed in this court on July 30, 2019. Doc. 1. As the facts show, Debtor Shaneka Paschal entered into an agreement with Tenneson Nissan on November 3, 2018 to lease a 2018 Nissan Altima. Proof of Claim 1-1, Pg. 6. The agreement shows that Tenneson Nissan was the "Lessor" and Debtor was the "Lessee." *Id*. The agreement states that, by signing the document, Debtor agrees to "lease the vehicle under the terms on the front and back of this Lease." *Id*. The agreement further states, *inter alia*, that "[Debtor] understand[s] that this is a Lease. You do not own this Vehicle, unless and until you exercise your option to purchase this vehicle." *Id*. The agreement then contains amounts such as the monthly payment, here $818.42, and the length of the "lease" term, here 36 months.

The agreement then states relevant information pertaining to capitalized costs, residual value, and other terms and conditions such as the annual mileage limits for the vehicle as well as the rate for each mile the Debtor drives the vehicle over that limit. Additionally, the agreement contains provisions that require the Debtor to surrender possession of the vehicle at the conclusion of the lease term as well as an option to purchase the vehicle at the end of the term for

the amount of $14,087.50. *Id*. Finally, there is a provision that allows Debtor to prematurely end the agreement: "[Debtor] may have to pay a substantial charge if [Debtor] end[s] this Lease early." *Id*.

During the hearing, the Debtor argued that the document Nissan filed as the lease agreement was difficult to read and was "deceitful," due to the small writing of the text in the agreement. Debtor did not provide a brief on the issue. Nissan argues that the agreement is a lease agreement and as a result the Debtor must either assume or reject the lease agreement in her chapter 13 plan. Finally, Nissan argues that the plan fails to provide for adequate protection and therefore has objected to the plan's confirmation.

## II. LEGAL STANDARD

First, under 11 U.S.C. §362(d), a party may move for relief from the §362 automatic stay and, upon notice and a hearing, a court may grant the motion for cause, including for the failure to provide adequate protection. 11 U.S.C. §362(d)(1). 11 U.S.C. §361 states that adequate protection may be provided by "requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the. . .use, sale, or lease under §363 of this title. . . results in a decrease in the value of such entity's interest in such property." 11 U.S.C. §361(1).

Next, state law must be used to determine whether a signed agreement is a lease or a disguised security agreement. In Georgia, a lease is defined as "a transfer of the right to possession and use of goods for a term in return for consideration. . ." O.C.G.A. §11-2A-103(j). In that same subsection, the Georgia Code distinguishes a lease from a sale: "but a sale, including a sale on approval or a sale or return, or retention or creation of a security interest is not a lease." (*Id.*).

3

Under Georgia law, determining whether a "transaction in the form of a lease creates a security interest" is done so on a case by case basis. O.C.G.A. § 11-1-203(a). O.C.G.A. § 11-1-203 begins by stating factors where a lease creates a security interest if: the lessee is unable to terminate the lease, the lease term is "equal to or greater than the remaining economic life of the goods," the lessee is obligated to renew the lease for the remainder of the goods' economic life or is bound to become the owner of the goods, the lessee has an option to renew the lease for the remaining economic life of the goods for either no additional consideration or nominal consideration, and when the lessee has the option to purchase the goods at the end of the lease for either nominal or no additional consideration. O.C.G.A. § 11-1-203(a)–(b)(4). Conversely, a contract in the form of a lease does *not* result in a security interest when: the lessee "assumes [the] risk of loss of the goods;" the lessee agrees to pay fees for the goods such as taxes, insurance, registration, or service and maintenance costs; the lessee has the option to become the owner of the goods; and the lessee "has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed." O.C.G.A. § 11-1-203(c)(2)–(6).

Finally, under Georgia law, a person is liable on an instrument when the person signs the instrument—the signature may be indicated by the "use of any name. . .or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing." O.C.G.A. § 11-3-401(a)–(b). Additionally, "signed" is defined as "any symbol executed or adopted with present intention to adopt or accept a writing." O.C.G.A. § 11-1-201(37).

### III. DISCUSSION

Nissan objected to Debtor's chapter 13 plan for two reasons: the first being that the plan fails to properly treat the lease as required by law; second, the plan fails to provide for adequate protection for the vehicle. Doc. 21. Additionally, Nissan moved for relief from the stay for the same reasons stated above. Nissan argues that the collateral is "depreciating in value daily and the Debtor has no equity in the collateral." *Id*. In response, at the hearing for the motion for relief from stay, the Debtor has argued that the small size of the print in the contract which Nissan submitted as evidence made it difficult for the Debtor to read or understand what she was agreeing to. The Court will consider each reason in turn.

      **a.  The Plan Fails to Properly Treat the Lease**

Nissan's first argument for both relief from the stay and for objecting to the plan centers on Debtor's failure to properly treat the lease. In order for this argument to succeed, the signed agreement between Debtor and Nissan must be found to be a lease rather than a disguised security agreement. Fortunately, there is a case from the Middle District of Georgia that is quite instructive on this matter. In *Freeway Auto Credit v. Bonner* (*In re Bonner*), the Court first stated that one must use Georgia law in order to determine whether the signed instrument is a lease or a security agreement. *Freeway Auto Credit v. Bonner* (*In re Bonner*), 2006 Bankr. LEXIS 1497, *6 (Bankr.M.D.Ga. 2006).

The *Bonner* opinion leans on Georgia law and prior Georgia cases to determine whether a disputed lease agreement should be held to be a true lease or a disguised security agreement. *Bonner* considers that a lease is "a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval or a sale or return, or retention or creation of a security interest is not a lease." O.C.G.A. § 11-2A-103(1)(j). *Bonner* then relies

5

on a case from the Bankruptcy Court for the Southern District of Georgia that cited a Georgia Court of Appeals case:

> In *Summerhill v. Telerent*, the Georgia Court of Appeals held that an agreement is a lease, and not a secured transaction, if two factors are present: one, the lessor clearly owns the property, the lessee has only the right to possess and use, and the lessor regains possessions at the end of the agreement; two, the lessee's option to purchase at the completion of the lease requires payment of fair market value, not merely a nominal sum.

*Bonner* (citing *Lamar v. Mitsubishi Motor Credit of America, Inc., (In re Lamar)* 249 B.R. 822, 825 (Bankr.S.D.Ga. 2000) (citing *Summerhill v. Telerent* 252 Ga. App. 142 (Ga. Ct. App. 2000).

Therefore, for the present case the Court will consider whether two factors exist in the disputed agreement: 1) whether the lessor "clearly owns the property" while the lessee only has the right to possess and use the goods until the end of the term, at which point the lessee regains possession and 2) whether the lessee's option to purchase the goods at the end of the lease term requires consideration consistent with the fair market value of the goods at the time the option is to be performed. O.C.G.A. §11-1-203(c)(6).

The facts show that in the agreement signed by both Debtor and Nissan, the Debtor agreed that the agreement is a lease and that she is not the owner of the vehicle "unless and until you exercise your option to purchase this vehicle." Proof of Claim 1-1, Pg. 6. Debtor also agreed in the signed document to surrender possession of the vehicle at the end of the lease term: "When your Lease terminates, whether early or as scheduled, you will return this Vehicle to a Nissan dealer or other location we [Nissan] specify." Proof of Claim 1-1, Pg. 7. The agreement also states a lease term of 36 months; that term being the length of time in which the lessee, Debtor, has the right to possess the vehicle prior to returning the vehicle to the lessor, Nissan. Proof of Claim 1-1, Pg. 6. Under the agreement, the Debtor has the option to terminate the lease early but

6

would have to pay to do so: "You may have to pay a substantial charge if you end this Lease early" and "<u>The charge may be up to several thousand dollars.</u>" *Id*., emphasis in original. From the facts stated, the Court can reasonably find that the first factor, whether the Lessor "clearly owns the property" while the Lessee merely has the right to possession and use of the goods until the end of the term, is met and exists in the signed agreement between both the Debtor and Nissan.

Next, the Court must consider whether the Lessee has an option to purchase the goods at the end of the lease term and, if so, whether the consideration required for purchase comports with the fair market value at the time the option is to be performed. According to the signed agreement between the two parties, there is an option for the Debtor to purchase the vehicle at the end of the lease term. *Id*. Also enumerated in the agreement is the amount Debtor would have to pay in order to exercise her option to purchase the vehicle at the end of the lease term: $14,087.50. It appears that this figure is based off certain values listed in the agreement although there was no evidence presented to determine how these values came about. Further, there was no evidence presented that showed what the estimated fair market value of the vehicle would be at the end of the lease term. Therefore, it is difficult to determine whether the purchase option price is consistent with the fair market value of the vehicle at the time the option is to be exercised. As a result, the Court cannot decide whether the second factor is met.

However, under Georgia law, "a transaction in the form of a lease creates a security interest if. . .the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance of the lease agreement." O.C.G.A. §11-1-203(b), (4). Using this statute, one can accept that if purchasing the vehicle at the end of the lease term for "no additional consideration" or "nominal consideration" amounts

7

to the lease creating a security interest, purchasing the vehicle at the end of the lease term for an amount not congruent with one of the aforementioned descriptors, "no additional" or "nominal," would *not* be considered a factor in favor of the signed agreement being construed as a security agreement rather than a lease. Using that logic, the Court believes that the stated cost to purchase the vehicle at the conclusion of the lease term, $14,087.50, constitutes an amount that is neither "no additional" nor "nominal" and, as a result, is an amount that signals the agreement is a lease rather than a disguised security agreement.

Additionally, it should be noted that under the terms of the agreement, the Debtor is responsible for "risk of loss, damage or destruction of this vehicle during the Lease term and until you return the Vehicle to [Nissan] as required above [referring to 'Vehicle Return section located in lease agreement]." Proof of Claim 1-1, Pg. 7. Debtor is also responsible for paying tax, title, insurance, and additional fees for "excessive wear and tear" for the vehicle. Proof of Claim 1-1, Pg. 6. Both of these factors align with provisions found in O.C.G.A. §11-1-203 that state a transaction does not a form a security agreement when such factors exist in the document.

After considering the different factors found in relevant cases and Georgia law, the Court finds that the signed agreement between the Debtor and Nissan is in fact a true lease rather than a disguised security agreement and as such, the Debtor failed to properly treat Nissan's claim.

### b. The Plan Fails to Provide for Adequate Protection

Adequate protection is required under 11 U.S.C. § 361 when use of collateral "results in a decrease in the value of [an] entity's interest." 11 U.S.C. § 361(1). Under Debtor's proposed chapter 13 plan, the Trustee is to pay Nissan $115 a month for preconfirmation adequate protection and, upon confirmation, would pay Nissan $456 a month for the vehicle. Doc. 2, Pg.

8

2. Nissan has claimed that the Debtor has not offered adequate protection beyond that preconfirmation amount. Neither party presented evidence to show an acceptable amount for adequate protection under the plan. However, according to the facts of the case and the documents filed, it appears that Debtor has not offered any adequate protection beyond the preconfirmation amount and, as a result, the Court finds that Debtor's chapter 13 plan fails to provide for adequate protection.

Finally, Debtor argued that the size of the text in the signed agreement was too small for the Debtor to understand what it was that she was signing. The Debtor did not testify on this matter, nor did Debtor testify at all, and Debtor's counsel did not provide any citation to any Georgia law requiring certain text size in contracts. Further, there was no evidence presented disputing the Debtor's signature on the lease agreement. O.C.G.A. § 11-3-401(a) states "a person is not liable on an instrument unless (i) the person signed the instrument;" here, the facts show that the Debtor did in fact sign the instrument. O.C.G.A. § 11-3-401(a). Next, "a signature may be made (i) manually or by any means of a device or machine; and (ii) by the use of any name. . .or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate the writing." O.C.G.A. § 11-3-401(b). As it stands, Debtor did not dispute her signature on the lease agreement and as such, the Court finds that Debtor's signature is proof of Debtor's adoption of the lease agreement.

### IV.   CONCLUSION

Creditor Nissan moved for relief from the automatic stay, as well as objected to the confirmation, of Debtor's plan arguing the plan failed to properly treat Nissan's claim as a lease and because the plan failed to provide for adequate protection. The facts show that a signed

9

agreement indicating a transaction between both Debtor and Nissan meets the requirements under Georgia law to be considered a true lease: there is an enumerated term for the lease, there is language in the agreement that shows Debtor agreed she was not the owner of the vehicle and instead was only in possession of the vehicle, the Debtor had an option to purchase the vehicle at the conclusion of the lease term, and it appears that the consideration required for the purchase option is neither "no additional" nor nominal. Next, Debtor's chapter 13 plan failed to provide significant adequate protection payments to Nissan. Finally, there is no evidence that the text size of the signed agreement was too small for Debtor to understand what she was signing and, further, Debtor did properly sign the lease agreement—signaling her adoption of the terms of the agreement. For the reasons stated, the Court finds that Nissan is entitled to relief from the stay and as such, Nissan's motion for relief from stay is granted. Additionally, the Court will sustain Nissan's objection to the confirmation as the plan does not provide adequate protection for the lessor. An order will be entered in accordance with this opinion.